## SMITH et al. v. LOUISIANA OIL REFINING CORPORATION.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1926.)

No. 6963.

1. Mines and minerals ⟨⟩78(1)—Oil and gas lease held to impose no obligation to drill or develop property, and no absolute obligation to pay additional consideration to be paid out of first oil produced.

Oil and gas lease, reciting cash consideration and other considerations, and providing for payment of additional amount out of the first oil produced and saved, but also providing that commencement of well might be deferred for successive periods of twelve months by paying specified rental, imposed no obligation on lessee to drill well or develop tract and no absolute obligation to pay the additional consideration.

**2. Mines and minerals ⊜⟹78(7)—Failure of lessee in oil lease to explore and develop tract with reasonable diligence is breach of contract; proper remedy being action on breach and not for recovery of purchase price.**

Failure of lessee of oil and gas mining lease to explore and develop leased tract with reasonable diligence under lease requiring him to do so would be a breach of contract; proper remedy being action on breach for damages and not for recovery of purchase price agreed to be paid from oil produced.

**3. Mines and minerals ⊜⟹78(7)—Complaint in action for alleged balance, on oil lease providing for payment out of first proceeds of oil, alleging failure to develop and failure to pay such balance, held to state no cause of action.**

Complaint in action to recover alleged balance of purchase price, under oil lease providing for payment of such balance after discovery of oil and out of proceeds thereof and providing for assignment, which alleged assignment by lessee, and failure to develop property and to pay balance of consideration, *held* to have stated no cause of action.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by J. B. Smith and others against the Louisiana Oil Refining Corporation. Demurrer to the complaint was sustained, and action dismissed, and plaintiffs bring error. Affirmed.

C. W. McKay and Walker Smith, both of Magnolia, Ark., and C. E. Wright, of El Dorado, Ark., for plaintiffs in error.

T. J. Gaughan, J. E. Gaughan, E. E. Godwin, and J. T. Sifford, all of Camden, Ark., for defendant in error.

Robert C. Knox and Jordan Sellers, both of El Dorado, Ark., amici curiæ.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. April 24, 1920, plaintiffs in error, plaintiffs below, with their wives, executed an oil and gas lease to one E. R. Ratcliff, named as trustee. This lease, so far as material to this controversy, provides:

"The said lessor for and in consideration of twelve thousand five hundred and no/100 dollars, cash in hand paid, and other good and valuable considerations, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept, and performed, has granted, conveyed, demised, leased, and let, and by these presents does grant, convey, demise, lease, and let unto said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying of pipe lines, and of building tanks, towers, stations, and structures thereon to produce, save, and take care of said products, all that certain tract of land situated in the county of Ouachita, state of Arkansas, described as follows, to wit: The southwest quarter of northeast quarter (S. W. ¼ of N. E. ¼) and northeast quarter of southeast quarter (N. E. ¼ of S. E. ¼) of section twenty (20), township fifteen (15) south, range eighteen (18) west.

"This sale is made for the cash consideration herein recited and the further consideration of twelve thousand five hundred and no/100 dollars to be paid out of the half of the first oil produced and saved from this leased tract of section 20, township 15, south range, 18 west, and containing eighty (80) acres, more or less.

"It is agreed that this lease shall remain in force for a term of five (5) years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises, the said lessee covenants and agrees:

"(1) To deliver to the credit of the lessor, free of cost, in tanks or pipe lines to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"(2) To pay the lessor two hundred and no/100 ($200.00) dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making ——— own connections with the well at ——— own risk and expense.

"(3) To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casing-head gas, two hundred and no/100 ($200.00) dollars per year, for the time during which such gas shall be used, said payments to be made each three months in advance.

"If no well be commenced on said land on or before the 1st day of May, 1921, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Bank of Stephens, bank at Stephens, Arkansas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of eighty and no/100 ($80.00) dollars, which shall operate as a rental and cover the priv-

ilege of deferring the commencement of a well for twelve (12) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above-described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that, upon the resumption of the payments of rental as above provided, the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

"If said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided shall be paid the said lessor only in the proportion which his interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of cost, gas, oil, and water produced on said land for its operation thereon, except water from wells of lessor.

"When requested by lessor, lessee shall bury its pipe lines below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without the written consent of the owners.

"Lessee shall pay for damages caused by its operations to growing crops on said land.

"Lessee shall have the right, at any time, to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignments of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof, and it is hereby agreed that, in the event this lease shall be assigned as to a part or as to parts of the above-described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts said land upon which the said lessee or any assignee thereof shall make due payment of said rental."

September 30, 1920, Ratcliff, as trustee, assigned this lease, together with other leases, to the Arkansas-Invincible Oil Corporation, Inc. The assignment contained the following clause:

"To have and to hold said leases, to the extent of this assignment, unto the said Arkansas Invincible Oil Corporation, Inc., its successors and assigns, subject, however, to all the conditions and limitations therein set forth and contained."

It appears from the record, and as practically conceded in the briefs, that Ratcliff was trustee for defendant in error, and this assignment was duly ratified by defendant in error by resolution of its board of directors.

August 25, 1924, plaintiffs in error brought this action against defendant in error to recover $12,500, alleged to be the balance of the purchase price under said lease. The gist of the action is set out in the eighth and ninth paragraphs of the amended complaint, to wit:

"Eighth. That said defendant duly paid the $12,500 to be paid in cash at the delivery and acceptance of the instrument of lease, but has never paid nor offered to pay said sum of $12,500, balance of purchase price, nor any part thereof, nor has ever drilled nor offered to drill any well as provided in said lease, and in utter disregard of the rights of said plaintiffs, and in violation of the express and implied covenants of said lease contract within its terms to explore and develop said leased tract for oil with reasonable diligence and to assemble the fund to pay said $12,500, balance of the purchase price, and notwithstanding the agreement to the contrary contained in said lease contract, and notwithstanding that the agreement to pay the $12,500 balance is enforceable as such against the defendant only, has assigned and transferred said lease to the Arkansas-Invincible Oil Corporation, Inc., as above.

"Ninth. That by said assignment and transfer of said lease said defendant breached its contract therein set forth to pay the plaintiffs said sum of $12,500 by disabling itself from keeping and performing the covenants of said lease whereby it could assemble and pay to said plaintiffs said balance of the purchase price for said lease therein set forth to be paid by the defendant, to wit: 'Twelve thousand five hundred and no/100 dollars to be paid out of the half of the first oil produced and saved from this leased tract'; and is therefore indebted to the plaintiffs in said sum of $12,500."

To this complaint defendant in error filed a demurrer upon the following grounds:

"(1) That the amended complaint does not state facts sufficient to constitute a cause of action against this defendant.

"(2) Because the contract filed with the amended complaint and marked 'Exhibit A' thereto is, as alleged and shown by the amended complaint, the basis of the cause of action as alleged, and that the statements and allegations in the amended complaint are at variance with the said contract and are not borne out by the same."

The lease was made a part of the complaint, and at the hearing on demurrer it was conceded by counsel for the plaintiffs that it was to be so taken into consideration. The demurrer was sustained and the complaint accordingly dismissed. This action of the court is the only error assigned.

[1] It is the contention of the plaintiffs in error that the lease imported an absolute promise to pay the sum of $25,000 as its consideration; that there was thereby further created an implied, if not an express, duty to explore and develop the leased tract for oil with reasonable diligence and to assemble a fund to pay said $12,500 balance of the purchase price; that the agreement to pay this balance is enforceable, as such, against the defendant only; and that by assigning and transferring the lease to the Arkansas-Invincible Oil Corporation, Inc., defendant in error has breached its contract by disabling itself from keeping and performing the covenants of the lease whereby it could assemble and pay to plaintiffs in error said balance of the purchase price out of one-half of the first oil produced and saved from the leased tract. It is therefore insisted that defendant in error is indebted to plaintiffs in error in the sum of $12,500.

Unfortunately for plaintiffs in error, the lease upon which the action is founded does not warrant the construction placed upon it

by them. The consideration named therein is not $25,000 in terms, but $12,500, "cash in hand paid and other good and valuable considerations, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept, and performed." Farther on a further consideration of $12,500 is mentioned "to be paid out of the half of the first oil produced and saved from this leased tract." The instrument imposes no obligation upon the lessee to drill any well nor to explore and develop the leased tract for oil with diligence or otherwise. On the contrary, its provisions negative such a requirement, as witness:

"If no well be commenced on said land on or before the 1st day of May, 1921, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Bank of Stephens, bank at Stephens, Arkansas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of eighty and no/100 ($80.00) dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve (12) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above-described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that, upon the resumption of the payments of rental as above provided, the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

Thus the privilege of continuing the lease

in force without drilling or exploring, upon payment of the rentals provided, is extended throughout the five-year term of the lease. The payment of the additional $12,500 is confined to the first oil produced and saved from the leased tract. No absolute obligation to pay is created. Such an obligation could have been made explicit, if so intended. There is no allegation that the rentals have not been paid, and the suit is brought long prior to the expiration of the five-year period. The privilege of assigning in whole or in part is expressly allowed, the covenants of the lease to extend to the assignees. The assignment of the lease is made subject to all the conditions and limitations therein set forth and contained. The lessor is bound by such assignment only if furnished with a written transfer or assignment, or a true copy thereof. The lessee, and it would follow the assignee, is given the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. The only penalty for default, deducible from the terms of the lease is forfeiture and surrender to the lessor.

[2] It is conceded that no oil was produced out of which the payment of the additional $12,500 could be made; and the lease imposes no duty upon the lessee to assemble such a fund, or, in default thereof, to become liable for its payment. Even though, as claimed by plaintiffs in error, it was the duty of the lessee to explore and develop the leased tract for oil with reasonable diligence, failure so to do would have been a breach of the contract and an action on the breach for damages, and not for recovery of the purchase price, would have been the remedy. Watchorn v. Roxana Petroleum Corporation (C. C. A. Eighth Circuit) 5 F.(2d) 636.

[3] The complaint stated no cause of action against the defendant, and the demurrer was properly sustained. It follows that the judgment of dismissal is affirmed.